# Third District Court of Appeal
## State of Florida

Opinion filed August 5, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1602
Lower Tribunal No. F23-10837
_____

**State of Florida,**
Appellant,

vs.

**Zachery Brandon Lyles,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Laura Anne Stuzin, Judge.

James Uthmeier, Attorney General, and Kayla Heather McNab, Assistant Attorney General, for appellant.

Daniel A. Callahan, P.A., and Daniel A. Callahan (Ft. Lauderdale); Cohen & McMullen, P.A., and Bradford M. Cohen (Ft. Lauderdale), for appellee.

Before MILLER and GOODEN, JJ., and KOENIG, Associate Judge.

KOENIG, Associate Judge.

The State appeals an order suppressing a firearm that Detective Carlos Corvo discovered on Zachery Brandon Lyles during a lawful investigatory stop. Having assumed the stop was lawful, the trial court suppressed the weapon on the ground that Detective Corvo lacked a reasonable belief that Lyles was armed and dangerous. Because the totality of the circumstances supplied that belief, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND AND PROCEDURAL HISTORY

In May 2023, Detective Carlos Corvo was on routine patrol when dispatch reported shots fired aboard a charter vessel near the docks. Dispatch broadcast a be-on-the-lookout (BOLO) description of the suspected shooter: a black male in his thirties wearing a white hat, a blue shirt, and tan shorts. As Detective Corvo responded, he encountered Lyles walking from the direction of the docks and matching the BOLO description. When Detective Corvo made eye contact, Lyles placed his hand on the waistband of his shorts and adjusted a bulge. Detective Corvo drew his firearm, ordered Lyles to raise his hands, and reached out and touched the bulge before lifting the shirt to reveal a firearm. The stop and the lifting of the shirt occurred simultaneously. Officers detained Lyles and placed him into custody.

2

Lyles was arrested and charged with one count of shooting/throwing a deadly missile, one count of possession of a firearm by a convicted felon, one count of using/displaying a firearm while committing a felony, and one count of discharging a firearm in public. He moved to suppress the firearm, asserting that Detective Corvo lacked the reasonable suspicion and probable cause necessary to seize him and conduct a search.

During a hearing, Detective Corvo testified as follows:

- On May 28, he received a call regarding "shots being fired in the area of the 4400 block" on a yacht parked at the docks and responded to the area.

- Dispatch provided a BOLO for "a Black male in his 30s with a white hat, blue shirt, and tan shorts."

- As Detective Corvo walked towards the area of the shooting, he saw a man matching the description of the BOLO: "[T]hey matched the clothing and physical description. And then on top of that, once I made eye contact with that individual I immediately noticed that there was a bulge on the right side of their body and that their hand immediately went to that area and began adjusting it."

- As he approached the individual (Lyles), Detective Corvo took out his firearm and told Lyles to "put [his] hands up." Detective Corvo then "reached towards the bulge on the outside of the shirt," "touched it," and "immediately felt that it was a firearm." He "[l]ifted the shirt, removed the firearm, and [Lyles] was placed in custody."

Before closing arguments, the trial court instructed the parties to assume that Detective Corvo had conducted a proper investigatory stop based on the BOLO.

3

The defense accepted that instruction. It maintained, however, that lifting the shirt at the very moment of the stop was an unlawful search because there was not "enough PC to do so. There wasn't reasonable suspicion to do so." The defense emphasized that Lyles was accompanied by three women; that he was not nervous, running, or sweating; and that Detective Corvo neither coordinated with other officers about other suspects nor asked Lyles any questions before lifting the shirt.

The trial court again directed the parties to assume that the Terry stop was proper.

The State responded that the search was lawful "because it was limited in scope and conducted only to the extent necessary to disclose the weapon and secure the safety of all the officers there." In its view, the statutory "probable cause" standard was satisfied: Detective Corvo was responding to "a shots fired call," and, upon encountering Lyles, who matched the BOLO description, he "saw a bulge of what he believed to be [a] firearm."

In rebuttal, the defense reiterated that, because Detective Corvo lifted the shirt simultaneously with the stop and without questioning Lyles, no lawful pat-down had occurred.

At the close of the hearing, the trial court granted the motion to suppress.

4

## ARGUMENT ON APPEAL

The State contends that the BOLO description, combined with the report of shots fired, was legally sufficient to establish reasonable suspicion, and that Detective Corvo's immediate observation of the bulge at Lyles' waistband confirmed that suspicion.

Lyles responds on several grounds. First, he argues that a fellow officer's radio call—made after Lyles was handcuffed and suggesting that the officers did not yet know whether Lyles was connected to the shooting—undermines the credibility of the officer who removed the weapon. He contends that the trial court reached essentially the same conclusion in ruling as it did.

He further argues that the BOLO lacked sufficient detail; that Detective Corvo never testified to any experience and/or training that would allow him to identify the bulge as a firearm; and that Detective Corvo placed the recovered gun on the sidewalk in front of Lyles and did not search him for a second weapon, which, Lyles says, shows that the professed concern for safety was disingenuous. Finally, Lyles argues that the body-camera video shows none of the furtive movements the officer described, and that the evidence that law enforcement was stopping other black men suggests he was not stopped because he matched the BOLO.

**ANALYSIS**

Under Florida's "Stop and Frisk Law" a law enforcement officer is authorized to temporarily detain an individual whenever he or she "encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county." § 901.151(2), Florida Statutes (2023). This investigatory stop (or "Terry-stop") "requires that the officer possess a *reasonable suspicion* that the citizen has committed, is committing, or is about to commit a crime in order to support the detention." State v. Cruse, 121 So. 3d 91, 95 (Fla. 3d DCA 2013) (emphasis added) (citing § 901.151(2), Fla. Stat.; see also Goodman v. State, 280 So. 3d 537, 543 (Fla. 2d DCA 2019) ("The reasonableness of the officer's suspicion depends upon the totality of the circumstances, including the officer's training and experience."). Because an investigatory stop "affects the suspect's Fourth Amendment rights, it invokes constitutional safeguards, and the stop must be supported by an officer's well-founded, articulable suspicion of criminal activity." Cruse, 121 So. 3d at 96.

Here, the trial court instructed the parties to assume that the BOLO justified the Terry stop. The court thereby accepted that Detective Corvo had

reasonable suspicion of criminal activity sufficient to detain Lyles temporarily—that is, that the detention itself was lawful.[1] The court nonetheless granted the motion to suppress, reasoning that Detective Corvo lacked reasonable suspicion—the term the statute uses is probable cause—to believe that Lyles was armed and dangerous and therefore posed a "threat to the safety of [Detective Corvo] or any other person." See § 901.151(5), Fla. Stat.[2]

The statute's "probable cause" is not the probable cause required to make an arrest. Rather, "when the term 'probable cause' is used in section 901.151, the term means reasonable belief or suspicion." Cruse, 121 So. 3d

---

[1] This assumption was based on the court's factual determination that Lyles matched the BOLO and was in the vicinity of the crime. This factual determination is supported by competent substantial evidence in the record. "When reviewing a motion to suppress, we defer to the trial court's factual findings if they are supported by competent, substantial evidence, and review legal conclusions *de novo.*" Maragh v. State, 905 So. 2d 207, 207 (Fla. 3d DCA 2005).

[2] Subsection (5) provides: Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has **probable cause** *to believe that any person whom the officer has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon*. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized. (Emphasis added).

at 96. Any search based on "reasonable belief or suspicion" must be "strictly limited to the extent necessary to reveal the weapon and protect the officers." Id. "During an investigatory stop, an officer may conduct a 'stop and frisk' or pat-down of the suspect if the officer has a reasonable belief that the suspect 'is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person . . . .'" D.H. v. State, 121 So. 3d 76, 80 (Fla. 3d DCA 2013) (quoting § 901.151(5), Fla. Stat.); Cruse, 121 So. 3d at 99 ("[T]hree conditions are necessary to effectuate a lawful pat-down: (1) the suspect's temporary detainment must be lawful; (2) *the officer must have a reasonable suspicion that the suspect is armed*; and (3) the pat-down must be strictly limited 'only to the extent necessary to disclose, and for the purpose of disclosing,' the weapon." (emphasis added) (quoting §901.151(5)). The pat-down search must be based "specifically on the reasonable belief that the suspect is armed and dangerous, and not simply on the reasonable suspicion that justified the investigatory stop at the outset." D.H., 121 So. 3d at 80.

Here, the trial court found that Detective Corvo had reasonable suspicion to stop Lyles because Lyles matched the fairly detailed BOLO

description.[3] Yet the court found that Detective Corvo lacked reasonable suspicion that Lyles was armed and dangerous, resting that conclusion on the following, each of which preceded the removal of the weapon:

- Corvo did not ask Lyles any questions;
- Corvo did not "relay any information about [Lyles] to dispatch;"
- Corvo did not "follow up with concurrent investigations in the area;"
- Corvo did not "engage with any other officers on scene to determine if [Lyles] may or may not be involved in a crime;"
- "There [was] no observable bulge on or around [Lyle's] waistband based on the Body Worn Camera footage in evidence at the hearing and shown to the Court;" and
- Corvo never testified about "concerns for officer safety or safety for the public at large."

These findings, however, are largely beside the point in determining whether Detective Corvo had reasonable suspicion to search Lyles. Reasonable suspicion that a suspect is armed with a dangerous weapon "must be supported by some objective basis such as aggressive activity or seeing a bulge prior to the pat-down." D.H., 121 So. 3d at 80. Whether

---

[3] Lyles contends that the BOLO in this case was vague, but we disagree. Compare Sanchez v. State, 199 So. 3d 472, 474-77 (Fla. 4th DCA 2016) (finding BOLO vague where it identified "two black males fleeing westbound from the store"); Jean v. State, 987 So. 2d 196, 198 (Fla. 4th DCA 2008) (finding BOLO insufficient because officer merely testified the suspect matched the BOLO without identifying "the source of the BOLO *or the BOLO's description of the suspects*") (emphasis added), with Coney v. State, 341 So. 2d 238 (Fla. 3d DCA 1976). In addition, the trial court specifically ruled that the BOLO was sufficient to create reasonable suspicion for the stop, i.e., it was not vague.

9

Detective Corvo questioned Lyles, radioed dispatch, or conferred with officers nearer the scene has no bearing on that discrete question. As for the bulge, the trial court appears to have credited Detective Corvo's testimony at the hearing that he saw one, even though the court could not discern a bulge in the video. The video also corroborates his testimony that Lyles moved his hand to the area of his waistband.

To the extent the trial court suppressed the firearm because the stop and the search occurred simultaneously, that rationale finds no support in the law. Applying the correct standard to this record, the totality of the circumstances gave Detective Corvo a reasonable suspicion that Lyles was armed with a dangerous weapon and therefore posed a threat to the safety of the officers and others. Detective Corvo responded to a report of "shots fired" near the Fontainebleau Hotel. On arriving, he received a fairly detailed BOLO for the suspect—a black male in his thirties wearing a white hat, blue shirt, and tan shorts. He immediately saw that Lyles matched that description. And when he made eye contact with Lyles, he observed a bulge and saw Lyles move his hand to that area to adjust it.[4] Richardson v. State,

---

[4] Detective Corvo did not need to specifically testify that there existed a risk to officer safety; his testimony that he observed a bulge and observed furtive movement suggesting Lyles had a firearm (in the face of a BOLO and shots fired call in the area) was sufficient.

10

599 So. 2d 703, 706 (Fla. 1st DCA 1992) ("[T]he officer's description of appellant's conduct, together with the observation of the bulge, was enough to permit the judge's approval of the limited pat-down which disclosed the weapon."); id. at 705 ("Examples of types of conduct which may constitute articulable facts to support a reasonable suspicion that a suspect is armed and dangerous include: (1) the suspect's failure to cooperate, (2) the suspect's furtive movements, and (3) a bulge in the suspect's clothing."); Calhoun v. State, 308 So. 3d 1110, 1115 (Fla. 1st DCA 2020) (finding stop/pat-down lawful where "the deputies saw unusual activity at an unusual hour in a location known for ongoing problems with drugs and loitering" and one of the deputies "saw a bulge" in the defendant's pocket and the defendant appeared nervous). See also State v. Hernandez, 658 So. 2d 620, 621 (Fla. 3d DCA 1995) (finding reasonable suspicion where officer saw the defendant run behind a building in an area recently the target of burglaries, noticed a bulge, and lifted the defendant's shirt: "[A]n officer's conduct in reaching the spot where a gun was thought to be hidden without first conducting a pat down, was a limited intrusion designed to insure the officer's safety and was, therefore, reasonable").

We reverse the order granting the motion to suppress and remand for further proceedings consistent with this opinion.

Reversed and remanded.